*408
 
 Gaston, J.
 

 The daughter of the plaintiff had inter-with one Morris Richards, of the county of Surry, a soldier of the revolution, who, as such, drew a semi-annual pensjon 0f $40, from the government of file United' States. Richards was in scanty circumstances and embarrassed with debts; and his creditors had been occasionally permitted by him to draw this pension, and pay themselves in part or in whole out of its proceeds. The defendant, Howard, had a demand against him, and got possession of his certificate, and was arranging, or had arranged, with him for obtaining a letter of attorney to draw the pension. Under these circumstances, the plaintiff, on the 10th of May, 1837, executed his obligation to the defendant in the penal sum of $203, with condition, that, whereas the defendant held a note of the said Richards, for the sum of $115 29, if the plaintiff should cause to be paid to the defendant, on the first day of March thereafter, $30, provided the said Richards should live, and every six months thereafter cause to be paid the sum of g20, until Richards’ note should be fully paid off; then the obligation should be void, otherwise in fullforceand virtue. In September, 1838, the plaintiff filed this bill, wherein he charges, in substance, that it was an essential part of the agreement between himself and the defendant, that the plaintiff should not be bound to make the payments stipulated for in the condition of the bond, unless the said Richards should permit him to draw the pension money; that it was declared by the defendant, who drafted the bond, that this part of the agreement was sufficiently manifested and expressed by the proviso therein, “ if the said Richards should live;” and that upon this assurance, and upon the belief that the bond did manifest this essential part of the agreement, the plaintiff executed it. The bill further charges that although, at the time he executed this bond, he had a full expectation that the said Richards would authorise him to draw the pension, yet that the said Richards had refused to do so; and the defendant is about to enforce from the plaintiff the collection of the instruments due according to the literal terms of the condition, contrary to the true intent of the agreement. Upon the filing of the bill, a temporary
 
 *409
 
 injunction was granted. The defendant answered thebill; and therein positively denied, that it was a part of the agreement, that the plaintiff’s obligation should in any manner depend upon Richards permitting him, the plaintiff, to act as his attorney in drawing the money; and averred that the bond was executed by the plaintiff, with a perfect knowledge that it contained no such agreement; and that the only explanation asked or given, with respect to the form of the instrument, was an enquiry from the plaintiff, whether the words “provided the said Morris Richards should live,” ought not to be repeated after every instalment therein provided for, to which enquiry the defendant answered that in his opinion the mention of it once was quite sufficient. The defendant also' stated that, at the time of taking the bond, he fully believed that the plaintiff would be authorised by Richards to draw the money, if the plaintiff desired it, but that he regarded this' matter as one, with which
 
 he
 
 had no concern, and further expressed his confident belief, that if Richards has refused to give such authority, it was because Richards had reason to-believe that the plaintiff did not desire to have it. Upon the coming in of the answer, the injunction was dissolved, and the bill held over as an original bill. Replication was filed to the answer, and proofs were taken on both sides. There can be no question of the meaning of the bond. The plaintiff is thereby bound to make the payments at the times and according to the instalments stated, if Morris Richards be alive. By no intendment can a further condition be understood, “ if also, he shall permit the plaintiff to act as his attorney in drawing the pension money.” The ground of relief for the plaintiff, if he have any, must be that' this further condition was a part of the agreement, and was omitted in- the instru-ment, through the fraud or unskilfulness of the' defendant, who acted as the draftsman. The plainest instruments may be rectified in Equity upon clear proof of fraud or mistake, but as solemn writings deliberately executed must be regarded, ordinarily, as containing the well advised and final agreement of the parties, in relation to the subject matter thereof, they will not be meddled with, but upon such clear proof.— We deem it unnecessary to enter upon a minute examination*
 
 *410
 
 the testimony, exhibited in .this cause, but will briefly state the most m ate rial parts of it, to show that it falls very short of the proof necessary to sustain the bill.
 

 The only witness, whose testimony is much relied on for that purpose, is Mrs. Richards, the wife of Morris Richards, and daughter of the plaintiff. She states that she was not present when the instrument was signed, but came into the room after it was signed, and while it was lying on the table — that Joseph Howard then read it over to the plaintiff, who told Howard that he wanted it put, into the writing, <‘if Morris Richards lived, and
 
 he
 
 should draw the pension”— that he asked defendant twice to have this put into the writing^-that defendant observed, “ it would make no difference, for he would be' certain to draw the pension” — that the defendant then shoved the certificate into the plaintiff’s hands, and put up the bond. Now, if this testimony be regarded as unexplained or uncontradicted by any other evidence, it does not establish the plaintiff’s allegation. It shows that he wasawarethat the condition which he wanted was not in the writing. It shows, further, that defendant
 
 did
 
 not pretend that the writing
 
 implied
 
 any such condition — but
 
 that
 
 defendant insisted that the plaintiff did not need any such condition, because he would be certain to draw the pension.-— How this fact was, the plaintiff was better qualified to judge than the defendant, and if
 
 he
 
 had doubts upon it, there was still time for him to stop the completion of the agreement.— But he received the certificate, and did not object to the defendant putting up the bond.
 

 Morris Richards has also been examined, but declares, that, although present when the bond was executed, he was so hard of hearing as not to understand it, and does not pretend that he heard the agreement of the parties.
 

 It is to be remembered, that the defendant’s answer, directly /responsive to the allegations of the bill, is full in denying the alleged fraud or mistake. It is mauifest, too, that Mrs. Richards is much irritated against the defendant, because of cer tain treatment of her husband, which is not put in issue by the bill, and which, if true, gives her very well-founded cause
 
 *411
 
 of anger. It is in proof also, that she has taken a decided stand against him in this cause, and has declared that if she could prevent it, he never should get payment of his claim. The subscribing witness to the bond has also been examined on the part of the defendant, and testifies, that it was executed deliberately, but says nothing of any condition suppressed or misrepresented. There is no proof of weakness of intellect on the part of the plaintiff, and there is not a little room left for the belief, that Richards’ refusal to give the plaintiff authority to draw the money was
 
 formal
 
 rather than
 
 real.
 
 The money, or at least a portion of it, when drawn, has passd through his hands.
 

 Per Curiam, Bill dismissed, with costs.